AO 91 (REV.5/85) Criminal Complaint                              AUSA Patrick C. Pope, (312) 353-1980

# UNITED STATES DISTRICT COURT

__NORTHERN__ DISTRICT OF __ILLINOIS, EASTERN DIVISION__

UNITED STATES OF AMERICA

v.

MARTIN MARTINEZ

**DOCKETED** AUG 2 3 2002

**FILED** JUL 2 6 2002

**MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT**

CRIMINAL COMPLAINT

CASE NUMBER: 02 CR 730

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. From at least on or about April 1, 2002, through at least in or about July 2002, in Cook county, in the Northern District of Illinois, defendant did,

> knowingly and intentionally conspire with others known and unknown to distribute and to possess with the intent to distribute controlled substances, namely, in excess of 500 grams of mixtures containing cocaine, a Schedule II Narcotic Controlled Substance, and wholesale quantities of marijuana, a Schedule I Narcotic Controlled Substance;

in violation of Title 21, United States Code, Section 846.

I further state that I am a(n) Task Force Officer with the DEA and that this complaint is based on the following facts:

Official Title

**SEE ATTACHED AFFIDAVIT**

Continued on the attached sheet and made a part hereof: _X_ Yes ___ No

_____
Signature of Complainant

Sworn to before me and subscribed in my presence,

July 26, 2002                                at   Chicago, Illinois
Date                                             City and State

Sidney I. Schenkier
United States Magistrate Judge                   _____
Title of Judicial Officer                        Signature of Judicial Officer

1

|||
|---|---|
| STATE OF ILLINOIS | ) |
| | ) SS |
| COUNTY OF COOK | ) |

### AFFIDAVIT

I, Chris Geer, being duly sworn on oath, state as follows:

I. **INTRODUCTION**

1. I am a Task Force Officer with the Drug Enforcement Administration (DEA), United States Department of Justice. I am currently assigned to the DEA Chicago Field Division, and have been so assigned for the past four years. In connection with my official duties, I investigate criminal violations of federal statutes, including violations of Title 21, United States Code, Sections 841, 843 and 846 (controlled substance violations). I have received specialized training in the enforcement of federal narcotics laws, and I have been involved in all aspects of narcotics trafficking investigations, including: (a) the debriefing of defendants, witnesses, and informants, as well as others who have knowledge of the distribution and transportation of controlled substances, and of the laundering and concealing of proceeds from drug trafficking; (b) surveillance; and (c) analysis of documentary and physical evidence. I have also testified in judicial proceedings and prosecutions for violations of federal narcotics laws. Based on my training and experience as a DEA Task Force Officer, I am familiar with the ways in which narcotics dealers conduct their drug-related business, including, but not limited to, their use of code words to identify themselves, the nature of the

communication and/or to conduct their transactions.

2. The information in this affidavit is based upon my own investigation as well as information I have learned from other law enforcement agents and officers as well as my review of recordings of consensually-recorded conversations and conversations intercepted pursuant to court orders as well as summaries of those conversations.

3. This affidavit is submitted in support of a criminal complaint charging MARTIN MARTINEZ with conspiracy to possess with intent to distribute and to distribute controlled substances, namely, cocaine and marijuana, in violation of Title 21, United States Code, Section 846.

4. Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of the above-mentioned criminal complaint, I have not included each and every fact known to me and other law enforcement agents concerning this investigation. Rather, I have set forth only the facts that I believe are necessary to establish probable cause for the issuance of the criminal complaint.

## II. OVERVIEW

6. There is probable cause to believe that MARTIN MARTINEZ is a large scale cocaine and marijuana trafficker with customers in the greater Chicago area. In or around April 2002, DEA began intercepting pursuant to court order telephone conversations on the

cellular telephone used by Ed Smith. In late May 2002, DEA began intercepting pursuant to court order telephone conversations on the cellular telephone used by MARTIN MARTINEZ (773-454-2562). The interception continued until late July 2002. During this investigation, law enforcement agents and officers have seized cocaine, marijuana, cash and firearms from various individuals engaging in narcotics transaction with MARTIN MARTINEZ.

7. In Section III below, I set out brief summaries of some of the pertinent calls intercepted on MARTIN MARTINEZ' telephone, and other calls in which MARTIN MARTINEZ is a participant. I have also set forth summaries of some of the law enforcement action taken in connection with the intercepted calls. Based on my knowledge of the investigation to date, including the seizure of narcotics, the context of the conversations, my prior training, and conversations I have had with other agents and officers experienced in drug-trafficking investigations, I believe that each of the intercepted calls discussed below relate to drug trafficking or other criminal activity.

8. For some of the calls summarized below, I have placed in brackets my understanding of what is being said during the call, based on the contents of the conversations, my experience as a law enforcement officer and the experience of other law enforcement officers in this investigation, including our experience listening to the intercepted conversations as a whole. The times listed for

3

these calls are approximate. In most cases, voice identifications are based on names used during the intercepted conversations, voice recognition that has been accomplished to date by DEA agents, historical information developed during this investigation, and/or telephone subscriber information. With respect to Martin Martinez, as discussed below in Paragraph 31, the voice identification is based on the above as well as my review of the recorded telephone calls, my knowledge of the investigation, and my discussions with Martin Martinez on July 26, 2002. Finally, my summaries below do not include all potentially criminal calls intercepted during the period of interception, or all statements or topics covered during the course of the intercepted conversations.

### III. SUMMARIES OF INTERCEPTED CALLS, SEIZURES AND LAW ENFORCEMENT ACTIVITIES

**Calls Surrounding April 4, 2002 Seizure of Kilogram of Cocaine**

9. On April 3, 2002, at approximately 7:38 p.m., MARTIN MARTINEZ received a telephone call from Ed Smith. In this call, Ed Smith told MARTINEZ that he (Smith) needed to see him at 7:30 the next morning. MARTINEZ agreed but added that "this is a different price" [the price of the cocaine has changed]." Ed Smith and Martinez ultimately agreed on a price of $19,000.00 [for the kilogram of cocaine]. Ed Smith told MARTINEZ to contact his guy [MARTINEZ's cocaine source] and get it [cocaine for Ed Smith to purchase].

10. On April 4, 2002, at approximately 7:15 a.m., MARTINEZ

4

received a call from Ed Smith. In this call, Ed Smith told MARTINEZ that he had to explain to Ed Smith's guy [Smith's customer] why he keeps changing the prices. MARTINEZ told Ed Smith that "the one from the other day" was the last one and it belonged to MARTIN MARTINEZ and that's why he (MARTINEZ) gave him that price [for the last kilogram of cocaine]. MARTINEZ also stated that the price changed because he can't get his money back [MARTINEZ isn't making enough money on cocaine sales at the original price]. Ed Smith said when he gets the call [from his customer], he'll call MARTINEZ back [to set up the purchase of cocaine].

11. On April 4, 2002, at approximately 8:23 a.m., Ed Smith placed a telephone call to MARTIN MARTINEZ. In this call, MARTINEZ told Ed Smith he would sell him [a kilogram of cocaine] this last time for 1850 [$18,500] if they come before 9:00.

12. On April 4, 2002, at approximately 8:27 a.m., Ed Smith placed a call to MARTIN MARTINEZ. In this call, Ed Smith told MARTIN MARTINEZ that they [Ed Smith and Individual A] would be there in 30 minutes [to purchase the cocaine].

13. On April 4, 2002, at approximately 8:47 a.m., law enforcement conducting surveillance saw Individual A, carrying a blue bag, leave the rear of his residence at 2845 W. 79th, Chicago, Illinois, and get into a silver Ford pickup, Illinois license plate 1623 XM. Several minutes later, surveillance saw Individual A pull into a parking lot at 6450 S. Pulaski, Chicago, Illinois.

14. On April 4, 2002, at approximately 8:57 a.m., Ed Smith placed a telephone call to MARTIN MARTINEZ. In this call, Ed Smith tells MARTINEZ that he is about two minutes away and that he wants MARTINEZ to "take a little personal out" [remove a personal use quantity of cocaine from the kilogram] for him. MARTINEZ says he'll do it later. Ed Smith tells him to do it now, and MARTINEZ says he will.

15. At approximately 9:00 a.m., surveillance saw Ed Smith, driving a black Oldsmobile Bravada, go into same parking lot where Individual A was parked at 6450 S. Pulaski. After Ed Smith arrived, surveillance saw Individual A, carrying the blue bag, get out of his pickup truck and get into the passenger seat of Ed Smith's car. Surveillance then saw Ed Smith and Individual A drive to an alley behind MARTIN MARTINEZ's residence at 6542 S. Komensky, Chicago, Illinois. Due to the difficulty associated with conducting surveillance in the alley, law enforcement was not able to observe everything that occurred in the alley.

16. Shortly after arriving in the alley behind 6542 S. Komensky, Ed Smith and Individual A drove back to the parking lot at 6450 S. Pulaski. Once Ed Smith and Individual A arrived in the parking lot, surveillance saw Individual A get out of Ed Smith's car with the blue bag and get back into his Ford pickup. Surveillance then followed Ed Smith and Individual A in their separate vehicles southbound on Pulaski. When Ed Smith and

6

Individual A reached 71st Street and Pulaski, Individual A headed east on 71st, while Ed Smith continued southbound on Pulaski.

17. After Individual A drove east on 71st Street, two Chicago Police tactical officers conducted a traffic stop of Individual A's vehicle. One officer asked Individual A to get out of his car, and while this officer was identifying Individual A and speaking with him, the other officer went to the passenger side of Individual A's pickup truck. The second officer saw in plain view what appeared to be a kilogram of cocaine in an open blue bag on the seat of Individual A's pickup truck. The officer opened the door to the vehicle and took the suspected kilogram of cocaine, while Individual A was speaking with the other officer. The two officer's then left the scene together in possession of the suspected kilogram of cocaine. The officer's did not arrest Individual A.

18. On April 4, 2002, at approximately 11:30 a.m., Ed Smith placed a telephone call to MARTIN MARTINEZ. In this call, Ed Smith told MARTINEZ that they have to meet - that it's very important. MARTINEZ agreed to meet with Smith at Burger King on Pulaski, Chicago.

**June 17, 2002 Seizure of Marijuana**

19. On June 16, 2002, at approximately 5:27 p.m., MARTIN MARTINEZ received an incoming telephone call from Ed Smith. In this call, Ed Smith asked MARTINEZ if he is working today

7

[available to supply drugs to Smith]. MARTINEZ tells Ed Smith he is not working today. Ed Smith tells MARTINEZ that he needs to meet up with him first thing in the morning [to obtain drugs from MARTINEZ].

20. On June 17, 2002, at approximately 10:04 a.m., Smith called MARTINEZ and told MARTINEZ he has the tickets [money] already, and that he needs some of those parts [drugs]. On June 17, 2002, between approximately 11:03 a.m. and 11:06 a.m., Smith called MARTINEZ several times, and the calls went into the voice mail for MARTINEZ's phone.

21. On June 17, 2002, at approximately 11:05 a.m., law enforcement saw Ed Smith drive a white Ford Van in the alley behind MARTINEZ's residence at 6542 S. Komensky Ave., Chicago, Illinois. Law enforcement saw Ed Smith back the van in front of the garage, get out of the van and begin talking on his cellular telephone while walking in the gangway on the south side of MARTIN MARTINEZ's residence. At approximately 11:13 a.m., law enforcement saw Ed Smith get back in his van, drive out of the alley and go back to his own house.

22. On June 17, 2002 at approximately 12:35 p.m., surveillance saw Individual B drive a red Toyota Tercell into the alley behind MARTINEZ's residence at 6542 S. Komensky Ave., Chicago, Illinois, and park in front of the garage behind the residence. Law enforcement saw Martinez remove a large black

8

plastic bag from the trunk of the car driven by Individual B and carry the bag into the garage.

23. On June 17, 2002, at approximately 12:40 p.m., surveillance saw Ed Smith drive the white Ford van in the alley and park in front of the garage behind 6542 S. Komensky Avenue. The garage door opened and MARTINEZ came out of the garage carrying what appeared to be the same large black plastic bag MARTINEZ had received from Individual B. MARTINEZ placed the black plastic bag into the passenger side of the Ford van. After receiving the black plastic bag, Ed Smith drove to his house at 7750 S. Keating. At approximately 12:47 p.m., law enforcement saw Ed Smith carry the large plastic bag with both hands into his residence.

24. At approximately 1:34 p.m. on June 17, 2002, law enforcement saw an unidentified black female and an unidentified child leave Ed Smith's residence at 7750 S. Keating and get in a Lincoln Town car parked in front of this residence. Law enforcement then saw Ed Smith leave the house carrying the large plastic bag and place the large plastic bag in the trunk of the Lincoln Town car. Law enforcement then saw Ed Smith (driving) and the unidentified black female and unidentified child drive to a business location and a Wendy's restaurant. At approximately 1:54 p.m., law enforcement saw Ed Smith drive the Lincoln Town car in various directions, in an apparent attempt to detect and/or avoid surveillance, before getting on the expressway to Indiana. Law

enforcement followed Ed Smith, along with the unidentified female and child, to a residence at 8606 W. 375 N., in Michigan City, Indiana.

25. At approximately 3:20 p.m. on June 17, 2002, law enforcement saw Ed Smith back the Lincoln into the driveway at 8606 W. 375 N. An individual ("Individual C") came out of the residence and began walking to the rear of the Lincoln as Smith parked. Smith got out of the Lincoln and removed the large black plastic bag from the trunk and handed it to Individual C. Individual C then carried the large plastic bag with both hands to the front porch of the residence and went into the house carrying the large plastic bag. Smith then drove the Lincoln from the driveway and got back on the expressway headed toward Chicago. At approximately 3:25 p.m., law enforcement saw Individual C go to the front porch of the house and stand on the porch while talking on the telephone. It appeared as though Individual C was looking in the direction of where a surveillance was located.

26. At approximately 3:27 p.m., law enforcement saw Individual C go out of the back of the house carrying the large plastic bag in both hands. Shortly thereafter, law enforcement approached Individual C and detained him. Law enforcement read Individual C his Miranda rights, and Individual C verbally waived his rights, but refused to allow law enforcement permission to search the house.

27. Law enforcement secured the house and subsequently obtained an Indiana state search warrant. Law enforcement recovered the large plastic bag on the ground outside of the house, near a tree. The bag contained approximately 25 pounds of marijuana, with much of it individually packaged in smaller plastic bags. During the search of the house, law enforcement recovered approximately an additional 7 pounds of marijuana, approximately $7,600 in United States currency, and three firearms.

### Recent Activity

28. As recently as July 23, 2002, MARTIN MARTINEZ has been intercepted engaging in narcotics-related conversations. At approximately 10:57 a.m. on July 23, MARTIN MARTINEZ received a telephone call from Individual B. Individual B wanted to know if MARTINEZ went to see that [kilogram of cocaine]. MARTINEZ tells Individual B that he has been calling him [source of the cocaine] and can't get a hold of him. Individual B tells MARTINEZ to call him [Individual B] when he's ready to go see it, because there is a lot of garbage [poor quality cocaine] right now.

29. On July 23, 2002, at approximately 2:16 p.m., Martin Martinez placed a call to an unidentified Hispanic male ("H/M"). MARTINEZ said that he [MARTINEZ] will have a girl [kilogram of cocaine] for the H/M and if the H/M wants to see her [the cocaine] to stop by around 3:45 [PM]. MARTINEZ said that his friend [MARTINEZ's source for cocaine] is on his way.

11

30. On July 23, 2002, at approximately 3:59 p.m., MARTINEZ placed a call to another unidentified Hispanic male (H/M #2). MARTINEZ tells H/M#2 that the guy [source of cocaine] already came by, so if H/M#2 wants to come by and see the girl [kilogram of cocaine]. H/M#2 tells MARTINEZ that he will call later to see it.

31. On July 26, 2002, DEA agents and other law enforcement officers executed a search warrant at Martin Martinez's residence located at 6542 S. Komesky Avenue, Chicago, IL. During that search, I spoke with Martin Martinez and identified his voice as the one previously identified as Martin Martinez on the recorded telephone calls.

32. Among the items seized pursuant to the search warrant executed on July 26, 2002, were a small quantity of cocaine, several kilograms of marijuana, and a .45 caliber semi-automatic hand gun.

///

///

///

33. Based on all the foregoing information, there is probable cause to believe that MARTIN MARTINEZ has conspired to possess with intent to distribute and to distribute controlled substances, namely, cocaine and marijuana, in violation of Title 21, United States Code, Section 846.

CHRIS GEER
Task Force Officer
Drug Enforcement Administration

SUBSCRIBED and SWORN to before me
this 26th day of July 2002

SIDNEY I. SCHENKIER
United States Magistrate Judge