(Rev. 12/01)

# United States District Court
# Northern District of Illinois

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case Number: 02-CR-730-1 |
| v. ) | Judge: Joan Humphrey Lefkow |
| ) | |
| MARTIN MARTINEZ ) | |

Robert L. Rascia, Defendant's Attorney
Andrew C. Porter, AUSA

## JUDGMENT IN A CRIMINAL CASE
(For Offenses Committed On or After November 1, 1987)

**THE DEFENDANT ENTERED A PLEA OF:**

guilty to Count(s) 1, 2, 4, 7, 8, 9 of the indictment, which was accepted by the court.

The remaining Count(s) is/are dismissed.

**THE DEFENDANT IS CONVICTED OF THE OFFENSES(S) OF:**

| Title & Section | Description of Offense | Date Offense Concluded | Count Number(s) |
|---|---|---|---|
| 21 U.S.C. Section 846 | Conspiracy to Possess With Intent to Distribute Controlled Substances | 7/26/02 | One |
| 21 U.S.C. Section 841(a)(1) | Possession With Intent to Distribute Controlled Substances | 7/26/02 | Two |
| 21 U.S.C. Section 841(a)(1) | Possession With Intent to Distribute Controlled Substances | 7/26/02 | Four |
| 21 U.S.C. Section 841(a)(1) | Possession With Intent to Distribute Controlled Substances | 7/26/02 | Seven |
| 21 U.S.C. Section 841(a)(1) | Possession With Intent to Distribute Controlled Substances | 7/26/02 | Eight |
| 18 U.S.C. 924(c)(1) | Carrying a Firearm During the Commission of Another Crime | 7/26/02 | Nine |

The defendant is sentenced as provided in the following pages of this judgment.

Case: 1:02-cr-00730 Document #: 104 Filed: 02/11/05 Page 2 of 18 PageID #:223

MARTIN MARTINEZ
02 CR 730-1

## IMPRISONMENT

**IT IS THE JUDGMENT OF THIS COURT THAT:**

the defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total uninterrupted term of **156 MONTHS**.

As to Count 1,2, 4, 7, 8, the defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total uninterrupted term of **96 MONTHS**. As to Count 9, the defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total uninterrupted term of **60 MONTHS**.

The Court recommends to the Bureau of Prisons:

Court recommends that defendant be incarcerated in the Midwest.
Court recommends that defendant shall be evaluated and given drug and alcohol treatment while incarcerated.

### SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for the periods specified for each count of conviction.

The defendant is sentenced on all count(s) of conviction, namely, Count(s) 1, 2, 4, 7, 8 to a period of 5 years of Supervised Release, said periods to run concurrent.

The defendant shall report immediately to the probation office in the district in which the defendant is to be supervised, but no later than seventy-two hours after sentencing. In addition, see the attached page(s) defining the mandatory, standard and discretionary conditions of probation that apply in this case.

MARTIN MARTINEZ
02 CR 730-1

## MANDATORY CONDITIONS OF SUPERVISED RELEASE
## (as set forth in 18 U.S.C. § 3583 and U.S.S.G. § 5D1.3)

1) For any offense, the defendant shall not commit another federal, state or local crime;

2) for any offense, the defendant shall not unlawfully possess a controlled substance;

3) for offenses committed on or after September 13, 1994, the defendant shall refrain from any unlawful use of a controlled substance and submit to one drug test within fifteen days of release from imprisonment and at least two periodic drug tests thereafter for use of a controlled substance as determined by the court;

4) for a domestic violence crime committed on or after September 13, 1994, as defined in 18 U.S.C. § 3561(b) by a defendant convicted of such an offense for the first time, the defendant shall attend a rehabilitation program in accordance with 18 U.S.C. § 3583(d);

5) for a defendant classified as a sex offender pursuant to 18 U.S.C. § 4042(c)(4), the defendant shall comply with the reporting and registration requirements set forth in 18 U.S.C. § 3583(d);

6) the defendant shall cooperate in the collection of a DNA sample from the defendant if the collection of such a sample is authorized pursuant to section 3 of the DNA Analysis Backlog Elimination Act of 2000 and the Justice for All Act of 2004; and

7) The defendant shall pay any balance on the special assessment, restitution and/or fine imposed against the defendant.

## STANDARD CONDITIONS OF SUPERVISED RELEASE

1) For any felony or other offense, the defendant shall not possess a firearm, ammunition, or destructive device as defined in 18 U.S.C. § 921;

2) the defendant shall not leave the judicial district without the permission of the court or probation officer (travel outside the continental United States requires court authorization);

3) the defendant shall report to the probation officer as directed by the court or the probation officer and shall submit a truthful and complete written report within the first five days of each month;

4) the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

5) the defendant shall provide to the probation officer access to any requested financial information including, but not limited to, tax returns, bank statements, credit card statements, credit applications, etc.;

6) the defendant shall support his or her dependents and meet other family responsibilities;

7) the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons;

8) the defendant shall notify the probation officer ten (10) days prior to any change in residence or employment;

9) the defendant shall refrain from excessive use of alcohol;

10) the defendant shall not purchase, possess, use, distribute, or administer any narcotic or other controlled substance, or any paraphernalia related to such substances, except as prescribed by a physician, and shall submit to periodic urinalysis tests as requested by the probation officer to determine the use of any controlled substance;

11) the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

12) the defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer;

MARTIN MARTINEZ
02 CR 730-1

13) the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view by the probation officer;

14) the defendant shall notify the probation officer within seventy-two (72) hours of being arrested or questioned by a law enforcement officer;

15) the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court;

16) as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement; and

17) if this judgment imposes a special assessment, restitution or a fine, it shall be a condition of probation or supervised release that the defendant pay any such special assessment, restitution or fine in accordance with the court's order set forth in the Criminal Monetary Penalties sheet of this judgment.

## DISCRETIONARY CONDITIONS OF SUPERVISED RELEASE

The defendant shall also comply with the following additional conditions of supervised release:

The defendant shall participate in a drug aftercare program approved by the probation officer, which may include residential program for treatment of a narcotic addiction or drug or alcohol dependency and/or testing for detection of substance use or abuse.

Other conditions imposed by the court:

Costs of incarceration and supervision are waived. Defendant shall cooperate with Bureau of Immigration and Customs Enforcement (BICE) regarding his deportation proceedings and that, if deported, he shall not reenter the Unticd States, prior to notifying the United States Attorney General and following proper reentry procedures.

MARTIN MARTINEZ
02 CR 730-1

## CRIMINAL MONETARY PENALTIES

The defendant shall pay the following total criminal monetary penalties in accordance with the "Schedule of Payments." Unless waived, the defendant shall pay interest on any restitution and/or fine of more than $2,500, unless the restitution and/or fine is paid in full before the fifteenth day after the date of judgment, pursuant to 18 U.S.C. § 3612(f). The payment options may be subject to penalties for default and delinquency pursuant to 18 U.S.C. § 3612(g).

| Total Assessment(s) | Total Fine | Restitution | Mandatory Costs of Prosecution |
|---|---|---|---|
| $600.00 | Fine Waived | $ | $ |

The defendant shall notify the United States Attorney's Office having jurisdiction over the defendant within thirty days of any change of name, residence or mailing address until all special assessments, restitution, fines, and costs imposed by this judgment are fully paid.

## FORFEITURE

The defendant shall forfeit the defendant's interest in the following property to the United States:
Colt .45 caliber semi-automatic handgun, serial number 450853.
The real property located at 6542 South Komensky, Chicago, Illinois, as described and as ordered in the Preliminary Order of Forfeiture entered December 10, 2005. (ATTACHED)

The defendant is immediately remanded to the custody of the United States Marshal.

MARTIN MARTINEZ
02 CR 730-1

# RETURN OF SERVICE

I have executed this judgment as follows:

_____

_____

_____

_____

Defendant delivered on _____ to _____

at _____.

By:_____
(Signature)

Name (Print)_____

Title (Print)_____

MARTIN MARTINEZ
02 CR 730-1

Date of Imposition of Judgment/Sentencing: February 11, 2005

*[signature: Joan H. Lefkow]*

JOAN HUMPHREY LEFKOW
UNITED STATES DISTRICT JUDGE

Dated at Chicago, Illinois this **9th** day of March, 2005

UNITED STATES DISTRICT Court
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | **DOCKETED** |
| v. | ) No. 02 CR 730-1 | |
| | ) Hon. Joan F. Lefkow | DEC 1 3 2004 |
| MARTIN MARTINEZ | ) | |

### PRELIMINARY ORDER OF FORFEITURE

This cause comes before the Court on motion of the United States for entry of a preliminary order of forfeiture as to specific property pursuant to the provisions of Title 21, United States Code, Section 853 and Fed. R. Crim. P. 32.2, and the Court being fully informed hereby finds as follows:

(a) On April 3, 2003, an indictment was returned charging defendant with MARTIN MARTINEZ and others, with violations of the Controlled Substances Act pursuant to the provisions of Title 21, United States Code, Section 846, among other violations;

(b) The indictment sought forfeiture to the United States of specific property pursuant to the provisions of 21 U.S.C. § 853(a)(1) and (2), including the real property located at 6542 South Komensky, Chicago, Illinois;

(c) On January 26, 2004, pursuant to Fed. R. Crim. P. 11, defendant MARTIN MARTINEZ entered a voluntary plea of guilty to Count One of the indictment charging him with a violation of the Controlled Substances Act, pursuant to the provisions of 21 U.S.C. § 846, thereby making certain property named in the indictment subject to forfeiture, pursuant to 21 U.S.C. § 853, which states in part:

(a) Any person convicted of a violation of this subchapter...punishable by imprisonment for more than one year shall forfeit to the United States-

(1) any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation;

91

(2) any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation.

(d) As a result of his violations of 21 U.S.C. § 846, to which he pled guilty, the Court shall order that the real property located at 6542 South Komensky, Chicago, Illinois, is subject to forfeiture to the United States forfeit to the United States pursuant to 21 U.S.C. § 853. The real property is legally described as:

> LOT 15 IN BLOCK 10 IN ARTHUR T. MACINTOSH'S CRAWFORD AVENUE ADDITION TO CHICAGO, IN THE EAST ½ OF THE NORTHEAST 1/4 OF SECTION 22, TOWNSHIP 38 NORTH, RANGE 13, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS

Permanent Real Estate Index Number: 19-22-220-035-0000.

(e) As the foregoing real property is subject to forfeiture, the United States requests that this Court enter a preliminary order of forfeiture, forfeiting all right, title, and interest of defendant MARTIN MARTINEZ in the real property located at 6542 South Komensky, Chicago, Illinois, for disposition according to law;

(f) Pursuant to the provisions of 21 U.S.C. § 853(g), upon entry of this preliminary order of forfeiture, the United States Marshal shall, if appropriate, seize and take custody of the foregoing property for disposition as the Attorney General may direct;

(g) The United States requested that the terms and conditions of this preliminary order of forfeiture entered by this Court be made part of the sentence imposed against defendant MARTIN MARTINEZ and included in any judgment and commitment order entered in this case against him.

2

Accordingly, it is hereby ORDERED, ADJUDGED AND DECREED:

1. That, pursuant to the provisions of 21 U.S.C. § 853(a)(1) and (2), Fed. R. Crim. P. 32.2, and to defendant's guilty plea, all right, title and interest of defendant MARTIN MARTINEZ in the real property located at 6542 South Komensky, Chicago, Illinois is hereby forfeited to the United States of America for disposition according to law;

2. That, pursuant to the provisions of 21 U.S.C. § 853(g), upon entry of this preliminary order of forfeiture, the United States Marshal shall, if appropriate, seize and take custody of the foregoing real property, for disposition as the Attorney General may direct;

3. That, pursuant to the provisions of 21 U.S.C. § 853(n)(1), upon entry of this preliminary order of forfeiture, the United States shall publish notice of this order and of its intent to dispose of the property according to law. The government may also, to the extent practicable, pursuant to statute, provide written notice to any person known to have alleged an interest in the property that is the subject of the preliminary order of forfeiture, including, but not limited to: the Cook County Treasurer's Office; Chase Manhattan Mortgage Company; Isidro Martinez; and Magdalena Martinez;

4. Further, pursuant to the provisions of 21 U.S.C. § 853(n)(2), following notice as directed by this Court, and 21 U.S.C. § 853(n)(1), if any person other than the defendant, asserts an interest in the property that has been ordered forfeited to the United States, within thirty days of the final publication of notice or this receipt of notice under paragraph seven (7), whichever is earlier, and petitions this Court for a hearing to adjudicate the validity of this alleged interest in the property, the government shall request a hearing. The hearing shall be held before the Court alone, without a jury.

5. Following the Court's disposition of all third party interests, upon the government's motion, the Court shall, if appropriate, enter a final order of forfeiture as to the property which is the subject of this preliminary order of forfeiture, vesting clear title in the United States of America.

6. The terms and conditions of this preliminary order of forfeiture are part of the sentence imposed against defendant MARTIN MARTINEZ and shall be made part of any judgment and commitment order entered in this case against him;

7. This Court shall retain jurisdiction in this matter to take additional action and enter further orders as necessary to implement and enforce this forfeiture order.

Entered: _____
JOAN H. LEFKOW
United States District Judge

DATED: DEC 1 0 2004

4

1   USA v Martin Martinez - 02 CR 730-1

2   ** ** ** ** ** **

3   THE COURT: All right. Let me just look at the
4   employment history here.

5   Okay. Well, the one reason that I wanted to take a
6   recess was to review this recent report of the Sentencing
7   Commission called 15 years under guideline sentencing and see
8   what it had to say about drug offenses and mandatory minimums
9   and so on.

10   And sort of to cut to the chase here, while it is
11   positive about the increased rationality and transparency of
12   sentencing, which has been accomplished by the guidelines, and
13   I think we all agree that that is true, and in general its goal
14   of like people should be treated alike and like offenses should
15   be treated alike, it does express considerable concern about
16   both mandatory minimums and these sort of tinkering with the
17   policies and adding to the rules. What do they call it? Rule
18   creep. I haven't heard about this before. Or factor creep.

19   So it says -- the point being that while we try as
20   much as possible to comprehend every factor that would go into
21   sentencing and try to treat likes alike, there are obviously a
22   multitude of circumstances. And rather than speak for the
23   Commission, I would just read into the record: It is possible
24   to imagine countless circumstances that would make an offense
25   more serious. For example, one might wish to enhance

1  punishment for selling drugs: One, near a school yard; two,
2  near a prison; three, near a drug treatment facility; four, in
3  the presence of a minor; five, by employing a minor; or, six,
4  to a pregnant woman. It is difficult to argue that any of
5  these considerations are irrelevant. Yet, as more and more
6  adjustments are added to the sentencing rules, it is
7  increasingly difficult to ensure that the interactions among
8  them and their cumulative effect properly track offense
9  seriousness.
10       Then, of course, we have the statement that was front
11  page news in August of 2003 that Justice Kennedy made to the
12  American Bar Association in which he talked about the sort of
13  vast rate of incarceration in this country compared to the rest
14  of the world really. And attributed most of that to mandatory
15  minimums, especially in drug laws. And I will also say he
16  supported sentencing guidelines in principle, but said they
17  must be revised downward to less Draconian levels.
18       As for the mandatory minimums, the inflexible minimum
19  sentences written into some laws, Justice Kennedy said, he
20  could accept neither their necessity nor their wisdom. He's
21  hardly alone, even among conservatives, in raising these
22  objections. Chief Justice William Rehnquist has complained
23  that inflexible sentencing rules may threaten judicial
24  independence.
25       Now I say that because I think among the judiciary,

1   and I can only speak for myself and Justice Kennedy here, I
2   suppose, is that the feeling that if anything is unfair about
3   the guidelines, it comes out most in terms of these mandatory
4   minimums especially. And, of course, most of them deal with
5   drug laws. So it is kind of one and the same.
6           Now that's preface to, of course, the other side,
7   which is that the reason that Congress has been very harsh
8   about drug laws is because we all, I think can agree, that it
9   does nothing but cause heartache and heartbreak among people
10  whose children become addicted and whose lives are ruined
11  because of drug trafficking.
12          It is people such as yourself who take advantage of
13  other people's weaknesses and benefit from it financially that
14  contribute to the problem.
15          So I know that your family members here all see you as
16  a very good person. And I'm sure that you are in many ways.
17  There is a disconnect between what you do in this respect in
18  terms of hurting people you don't know as compared to taking
19  care of your own people, your own family members.
20          And I'm sure you would agree with me that you wouldn't
21  want any of your children or your family members using the
22  drugs that you have marketed to other people.
23          All right. Now turning to the factors to be
24  considered in imposing a sentence under 18 USC Section 3553,
25  the first being the circumstances of the offense, I think I

1  have covered that already.  This shows a rather longstanding
2  drug trafficking and not being as, we often see a person who is
3  just at the bottom of the distribution scheme, but at least
4  somewhat higher than the other co-defendants in this case.
5        The history and characteristics of the defendant are
6  all set out in the probation officer's report.  I won't go over
7  that again.
8        The need for the sentence imposed to reflect the
9  seriousness of the offense.  We know that at least ten years is
10 what Congress has demanded here.  And it would not be either --
11 anything less than that could not be considered reasonable as
12 to either promoting respect for the law or providing just
13 punishment.
14       As for deterrence, I don't know if there is any
15 deterrence in this field.  But any sentence above ten years I'm
16 sure would be sufficient to provide whatever deterrence can be
17 accomplished.
18       And then as you say, Mr. Porter, keeping this
19 individual drug trafficker out of circulation for ten years
20 will protect -- or more will protect the public from further
21 crimes.
22       And as for needed educational or vocational training,
23 I'm afraid that, you know, nothing good can come out of this
24 extended sentence in that respect.  Because by the time the
25 defendant is released, his opportunities will be narrower than

1 they were before.

2 All right. Now in light of all of that, I'm going to
3 impose a sentence of -- I wrote it down in terms of months
4 here -- 156 months, which is the mandatory minimum of ten
5 years, plus three years to reflect that this should not be a
6 minimum sentence in light of the whole history that I have gone
7 over today.

8 Now that would be 96 months on Count 1, which is well
9 below the guideline range. And then the mandatory additional
10 60 months for Count 9. Well, it is Count 1, 2 -- I have got to
11 look at this again.

12 Counts 1 and 2, 4 and 7. Is that right? One, two
13 and -- help me out here. What is the first group?

14 MR. PORTER: One, two --

15 THE COURT: And eight?

16 MR. PORTER: -- four, seven, and eight are all the
17 drug charges.

18 THE COURT: Okay. One, two, four, seven, and eight,
19 and 60 months on Count 9.

20 Now I will waive costs associated with supervision and
21 incarceration.

22 And as for supervision, you will be placed on a term
23 of supervised release for five years. This is four years on
24 Counts 1 and 2; three years on Counts 4, 7, and 8, and five
25 years on Count 9, all to run concurrently.

1        Within 72 hours of your release from custody from the
2 Bureau of Prisons, you will report to the probation office in
3 the district to which you are released. During your period of
4 supervision, you shall not to possess a firearm or destructive
5 device. You shall refrain from any unlawful use of a
6 controlled substance. And you must participate in drug
7 aftercare at the direction of the probation department.
8        And if you are removed from the United States through
9 deportation proceedings, you must not reenter prior to
10 notifying the United States Attorney General and obtaining his
11 or her permission.
12        All right. Was there a waiver of an appeal in this
13 case?
14        MR. PORTER: No, Judge.
15        MR. RASCIA: No, Judge. It was a blind plea.
16        THE COURT: All right. Then you do have the right to
17 appeal the sentence I impose. You should discuss that with
18 your lawyer. If you file an appeal, you must file within ten
19 days.
20        The special assessment is $600. Is that right?
21        MR. PORTER: It is, Judge.
22
23                    ** ** ** ** ** **
24
25